

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
April 24, 2023

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>JEFFREY BAXTER CHARLES,<br><br>              Debtor(s). | Lead Case No.: 17-12568-gs<br>Chapter 7 |
| YVONNE BANER,<br><br>              Plaintiff(s),<br><br>    v.<br><br>JEFFREY CHARLES,<br><br>              Defendant(s). | Adv. Proc. No. 17-01205-gs<br><br><u>Trial Date</u><br>DATE: August 15, 2022<br>TIME: 9:30 a.m.<br><br><u>Closing Argument</u><br>DATE:  October 11, 2022<br>TIME:   1:30 p.m. |
| JEFFREY CHARLES,<br><br>              Counter-Claimant(s),<br><br>    v.<br><br>YVONNE BANER; J. PAT FERRARIS; DEE PRESCOTT,<br><br>              Counter-Defendant(s). | |

1

<u>**MEMORANDUM AFTER TRIAL**</u>

Plaintiff Yvonne Baner sues defendant and chapter 7 debtor Jeffrey Charles to establish the nondischargeability of a state court judgment awarding her damages for malicious prosecution, abuse of process, and defamation. Baner contends that her damages are for willful and malicious injury that are nondischargeable under 11 U.S.C. § 523(a)(6). Originally, Baner also sought to deny the debtor's discharge under § 727(a)(3) and (4). Prior to trial, the court ruled that the malicious prosecution award established the element of malice under § 523(a) and required only that Baner prove the willfulness for those damages at trial. It denied Baner's motion for summary judgment that the state court judgment established the nondischargeability of the abuse of process or defamation damages under § 523(a)(6), or her claims under § 727(a). Trial proceeded on Baner's § 523(a)(6) claims, but she effectively abandoned her claims under § 727(a) when she failed to prosecute those claims at trial.

**Facts**

**A.  Ms. Charles's stroke and the documents prepared by Baner**

Charles's mother, Edith Charles, suffered a stroke in 2009. She was incapacitated and hospitalized for a period of time. Baner, an attorney, was neighbors with Ms. Charles and her daughter, Cheryl Corwin, the debtor's sister. Corwin asked Baner to prepare documents so Corwin could assist in Ms. Charles's care and financial matters. Baner agreed and prepared a power of attorney (Power of Attorney) and a health care directive (Health Directive). Ms. Charles executed both documents on May 6, 2009.[1]

---

[1] Though these facts have been the subject of several litigations, there remains some question as to the specifics of the documents Ms. Charles executed shortly after her stroke. Throughout this case, Charles has referred to two separate documents. One was a power of attorney Corwin used to control her mother's financial affairs. The other was both a health care directive and power of attorney. In other words, Charles contends that Baner drafted, and his mother signed, two powers of attorney after her stroke. Trial Exhibit 15a, Adv. ECF No. 160-15 at pp. 19:14-15 ("[I]t says 'Directive to Physician for Health Care and Durable General Power of Attorney.'"); 22:25-28 ("In discovery, I received from Attorney Baner a different document called a General Durable Power of Attorney with the – with the same date as the Physician's Power of Attorney.").

Charles had a strained relationship with his sister. He demanded that his sister and Baner

provide him with the documents signed by his mother. In response, Charles received an envelope

that contained a copy of the Health Directive and the document establishing his parents' 1997

trust, but not a copy of the Power of Attorney.[2] Trial Exhibit 15a, Adv. ECF No. 160-15 at p.

19:11-16. Baner has testified that she prepared the mailing envelope that Charles received on

---

Baner's trial testimony in the 2014 Lawsuit [defined below] indicates that instead of a durable power of attorney *and* a health care directive that included a second power of attorney, only one power of attorney was actually drafted:

> [Corwin] didn't know what kind of papers she needed, and neither did I really, other than if she's in the hospital, probably a physician's directive.  And if her mom is going to move and she's going to sign papers to release her, she probably needs a power of attorney.

Trial Exhibit 15d, Adv. ECF No. 161-2 at p. 9:20-24. Baner also testified:

> Q. BY MR. LYON:  So it was your suggestion and your idea to create the health care power of attorney?
>
> A. [BY MS. BANER] When I got the call from my neighbor and she told me her mother was in the hospital, I thought maybe she needed both. So while I was preparing the [power of attorney] document, I prepared the health care directive also.

Trial Exhibit 15d, Adv. ECF No. 161-2 at p. 3:14-19. Trial Exhibit O was admitted into evidence at trial. It is described in Charles's exhibit list as "General Durable Power of Attorney dated May 6, 2009."  Adv. ECF No. 168 at p. 4:13. It consists of two pages: a Summary of Durable Power of Attorney and another page with numbered paragraphs 7-9. Both pages have a signature of Edith Charles dated May 6, 2009. The Summary of Durable Power of Attorney begins, "The foregoing Durable Power of Attorney is really two documents in one. These documents, the Durable Power of Attorney for Health Care and the Durable General Power of Attorney can be very useful and important documents in estate planning." Trial Exhibit O, Adv. ECF No. 168-14 at p. 1. The Health Directive, however, was not admitted in either this proceeding or any of the state court proceedings, so a direct comparison of the two documents is not available.

[2] The return address on the envelope listed Corwin and her address. Trial Exhibit 15a, Adv. ECF No. 160-15 at p. 19:19-22. Charles continues to dispute whether it was Corwin or Baner who actually provided him with the Health Directive. It remains unclear why this is material, though Charles apparently views this as evidence of a conspiracy between Corwin and Baner. It is not.

Corwin's behalf but was unaware of and did not recall the contents of that envelope. Trial Exhibits 15c and 15d, Adv. ECF Nos. 161-1 at pp. 467:6-63:2 and 161-2 at pp. 21:26-22:11.

Charles originally challenged the Health Directive as fraudulent. He retained attorney Robirda Lyon to represent him in his dispute with his sister regarding her administration of their mother's affairs. On June 12, 2009, Lyon sent a letter to Baner as Corwin's attorney requesting that Corwin establish more regular communication with Charles about their mother's health and that Corwin maintain a spreadsheet of all expenditures. Trial Exhibit U, Adv. ECF No. 168-18.[3] Baner testified in the 2014 Lawsuit that she responded to Lyon's letter, though again the exact response is unclear and was not admitted into evidence in this case. Trial Exhibit 15c, Adv. ECF No. 161-1 at p. 77:3-5.

Unsatisfied, Charles retained another attorney, Michael Mushkin, to send Corwin a letter dated October 6, 2009.[4] This letter demanded an accounting of Ms. Charles's financial

---

[3] The court's decision in this matter is constrained by the lack of evidence presented and admitted. At the pretrial conference held on August 5, 2022, the parties agreed to admit the complete transcripts of the 2014 Lawsuit proceedings as Baner's case in chief in this proceeding. At trial, counsel for Charles also agreed to admit in this proceeding any exhibit admitted in the 2014 Lawsuit, to the extent those exhibits were also introduced in this proceeding. Counsel for Baner did not object to the admission of such exhibits in this proceeding.

Charles subsequently identified 32 exhibits for trial. Adv. ECF No. 168. Pursuant to the court's scheduling order, Baner objected to each exhibit prior to trial. Adv. ECF No. 172. At the commencement of the trial the court stated that in light of the objections the admissions of Charles's exhibits would be addressed as they were introduced at trial. Charles only moved, and obtained the admission of, Exhibits A, O and V.

The letter from Lyon was admitted into evidence in the 2014 state court case, Trial Exhibit 15b, Adv. ECF No. 160-16 at p. 32:21-22, and was designated as defendant's Trial Exhibit U, Adv. ECF No. 168-18. It is thus admitted as evidence in this proceeding by consent of the parties. The court notes that Charles's testimony at the 2014 Lawsuit trial also covered the substance of the Lyon letter and has also been admitted into evidence in this action. Trial Exhibit 15b, Adv. ECF No. 160-16 at pp. 28:1-32:22.

[4] The letter from Mushkin was admitted into evidence in the 2014 state court case, Trial Exhibit 15b, Adv. ECF No. 160-16 at p. 35:17-27, and was designated as defendant's Trial Exhibit E, Adv. ECF No. 168-5. It is thus admitted as evidence in this proceeding by consent of the parties. The court notes that Charles's testimony at the 2014 Lawsuit trial also covered the substance of

transactions after execution of the Durable Power of Attorney. Trial Exhibit E, Adv. ECF No. 168-5.[5] No response from Corwin was presented at the trial in this proceeding. Based on the court's review of the transcripts admitted at Trial Exhibits 15a-17, none was mentioned in the testimony provided during the trial of the 2014 Lawsuit.

In addition to Charles's concerns about Corwin's management of their mother's money, a dispute arose involving her house roughly a year after her stroke. Ms. Charles had placed her residence into the 1997 trust and designated Charles and Corwin as equal co-beneficiaries. Charles understood that some time prior to his mother's stroke, she transferred the residence out of the trust to herself possibly to refinance the mortgage.[6] In 2010, sometime after her stroke, Ms. Charles asked Baner to prepare a trust transfer deed to transfer the real property back into the pre-existing revocable living trust (Trust Transfer Deed). Again, Corwin and Charles were designated equal beneficiaries of the trust. Ms. Charles signed the Trust Transfer Deed on March 14, 2010. Trial Exhibit V, Adv. ECF No. 168-19. Baner explained during the 2014 Lawsuit that the Trust Transfer Deed was executed to correct an error. Charles has repeatedly argued the Transfer Trust Deed was signed and recorded in secret to facilitate Corwin's sale of the real

---

the Mushkin letter and has also been admitted into evidence in this action. Trial Exhibit 15b, Adv. ECF No. 160-16 at pp. 32:23-35:28.

[5] The letter from Mushkin refers to "copies of documents which purport to be a Durable Power of Attorney." Trial Exhibit E, Adv. ECF No. 168-5 at p. 2. It is unclear whether this reference is to the Health Directive or the general Power of Attorney which gave Corwin the ability to act on their mother's behalf, including financial matters. Charles's testimony has been he did not receive the Power of Attorney until after the probate action was commenced. Baner has previously noted that both the Lyon and Mushkin letters were premised on Corwin's ability to control Ms. Charles's financial affairs, thereby invoking the general Power of Attorney. Charles did not challenge the Health Directive. Therefore, the reference in the Mushkin letter, as well as the earlier Lyon letter, is to the general Power of Attorney. This reinforces the court's uncertainty as to whether there was a second power of attorney included within the Health Directive.

[6] Trial Exhibit 15c, Adv. ECF No. 161-1 at p. 84:11-14 [Baner Testimony] ("Q: So it's your testimony, then, that the deed had been taken out of the trust? A: Yes. It was out of the trust for purposes of refinance. They used to do that.").

property under the Power of Attorney, though he has not explained how putting the property into the trust would accomplish this.

**B. Charles's first lawsuit against Corwin and Baner**

On May 4, 2011, Charles sued his sister and Baner in the California Superior Court and amended his complaint shortly thereafter. *Charles v. Baner and Corwin,* Case No. TEC110438, Trial Exhibit 1, Adv. ECF No. 160-1 (2011 Lawsuit). Charles, proceeding pro se, alleged that he and Corwin "entered into an agreement concerning the disposition and operation of the property owned by Plaintiff and Edith Charles." *Id.* at ¶ 9. Charles further alleged that Corwin and Baner caused Ms. Charles to sign documents that Baner had prepared while Ms. Charles was suffering brain damage, heavily medicated, and tied down to the hospital bed. *Id.* at ¶ 10. Charles detailed his prior demands on Corwin and Baner. He stated his concerns with Corwin's use of his mother's income and bank account and his suggestion for appointment of a conservator. Charles set forth his growing dissatisfaction with Corwin's administration of their mother's affairs and his demand that Corwin provide an accounting to him.

Charles asserted 11 causes of action in the 2011 Lawsuit: (1) breach of covenant of good faith and fair dealing; (2) fraud; (3) breach of contract; (4) intentional infliction of emotional distress; (5) constructive trust; (6) constructive eviction; (7) conversion; (8) tortious interference with contractual agreement (9) accounting; (10) civil conspiracy; and (11) slander per se. *Id.* at pp. 6-17. Of these, the claims for breach of covenant of good faith and fair dealing; fraud; constructive eviction; conversion; tortious interference with contractual agreement accounting; and civil conspiracy are directed against, or can be read to state a claim against, Baner.

On July 27, 2011, Baner filed her demurrer to the 2011 Lawsuit. Trial Exhibit 2, Adv. ECF No. 160-2. Baner addressed each of the causes of action except for the claim for slander per se. She argued that the amended complaint failed to state a claim for relief, Charles lacked standing, and the allegations were uncertain, ambiguous and unintelligible. Charles opposed the demurrer. A hearing on the demurrer was set for September 22, 2011. Trial Exhibit 3, Adv. ECF No. 160-3.

**C.  The appointment of a conservator and dismissal of Charles's claims against Baner**

Charles hired yet another attorney, David Korrey, to seek appointment of a guardian for his mother's affairs and to obtain an accounting. On August 11, 2011, Korrey filed an action on behalf of Charles in probate court for the appointment of a guardian for Edith Charles. Charles has testified that during the commencement of the guardian action Korrey advised him to dismiss the pending 2011 Lawsuit against Corwin and Baner. Trial Exhibit 15b, Adv. ECF No. 160-16 at p. 59:13-15. According to Charles, Korrey advised that Charles should seek the necessary relief in the probate court rather than through the 2011 Lawsuit. Trial Exhibit 15a, Adv. ECF No. 160-15 at p. 53:10-21. Charles has testified that he listened to Korrey's advice and was willing to dismiss the 2011 Lawsuit prior to the hearing on the demurrer.

The state court's minute order reflects that Charles and Baner attended the September 22, 2011 hearing on Baner's demurrer. Trial Exhibit 3, Adv. ECF No. 160-3. The minute order is terse and reflects only that the parties "presented arguments." *Id.* The parties have not provided this court with the transcript of that proceeding. Charles did, however, testify in the trial of the 2014 Lawsuit that he did not argue against, but rather consented to approval of, the demurrer at the September 22, 2011 hearing. Trial Ex. 15a, Adv. ECF No. 160-15 at p. 54:3-4. The court sustained the demurrer and dismissed Baner without leave to amend. Trial Exhibits 2 and 4, Adv. ECF Nos. 160-2 and 160-4.

A bit more than a year later, on November 1, 2012, the probate court appointed a guardian to manage Ms. Charles's affairs. Charles has also testified the public guardian was later appointed conservator over Ms. Charles's affairs as well. Trial Exhibit 15c, Adv. No. 161-1 at p. 2:22-23.

Charles has testified that he received the Power of Attorney and the Trust Transfer Deed in response to discovery requests in the probate action. Trial Exhibit 15a, Adv. ECF No. 160-15 at pp. 22:25-28 and 42:15-28. He has also testified that he and Corwin ultimately entered into a settlement agreement resolving additional issues raised in the probate proceeding, including challenges to her accounting. *Id.* at pp. 56:10-57:24. Pursuant to the settlement agreement,

Charles was to receive $40,000 from his mother's estate upon Ms. Charles's death; such figure is to account for monies from Ms. Charles's estate that Corwin used for her own benefit. *Id.*

**D.  Charles brings a second civil action against Corwin and Baner**

On July 2, 2014, Charles filed his second pro se complaint against Corwin and Baner, commencing California state court proceeding RIC1406506 (2014 Lawsuit). Charles again alleged that his mother was "out of her mind" in the hospital. Trial Exhibit 5, Adv. ECF No. 160-5 at ¶ 8. He further alleged that Baner "took [Ms. Charles's] hand and moved it along the fraudulent power of attorney document's signature line that Baner had drafted." *Id.* at ¶ 11. Charles claimed that the Power of Attorney was fraudulent. *Id.* at ¶¶ 14 and 18. Charles further alleged that Corwin and Baner used the Power of Attorney to prevent him from seeing his mother and attempting to sell off her property. *Id.* at ¶¶ 13 and 14. Specifically, Charles alleged that "Baner simply drew up a transfer deed, forged Edith's signature then notarized and recorded the fraudulent document." *Id.* at ¶ 17.

Once again, Charles asserted 11 claims for relief, including a new claim for elder abuse. Those claims were: (1) fraud; (2) negligent misrepresentation; (3) civil conspiracy; (4) tortious interference; (5) elder abuse; (6) intrusion into private affairs; (7) intentional interference with expected inheritance; (8) RICO/Racketeering; (9) intentional infliction of emotional distress; (10) preliminary and permanent injunctive relief; and (11) declaratory relief. *Id.* at pp. 5-13. Unlike the 2011 Lawsuit, most, if not all, of the claims were brought against Baner as well as Corwin.

On August 1, 2014, roughly a month after filing the 2014 Lawsuit, Charles sent a letter to Baner at the address of her law firm in Temecula, California. Trial Exhibit 7, Adv. ECF No. 160-7. In the letter, Charles accused Baner of "tortiously" interfering in his family's affairs by assisting Corwin. He also stated that Baner's "criminal behavior" caused Charles and Ms. Charles "incalculable damages." *Id.* Roughly two weeks later, Baner answered the complaint. On August 19, 2014, Baner filed her Verified Cross-Complaint against Charles. Baner asserted claims for (1) abuse of process; (2) malicious prosecution; (3) extortion; (4) defamation; (5) elder

8

abuse; (6) intentional infliction of emotional distress; declaratory relief; (8) injunctive relief. Trial Exhibit 6, Adv. ECF No. 160-6 at pp. 9-15.

Though Charles filed his 2014 complaint without the benefit of counsel, he retained Armand Tinkerian and Eyad Yaser Abdeljawad of the Route 66 Law Group on, or around, November 2016. Trial Exhibit 9, Adv. ECF No. 160-9. Abdeljawad and attorney Paul Lyon[7] represented Charles at trial in the matter. Trial Exhibit 17, Adv. ECF No. 162-1 at p. 2. Prior to trial, the state court granted Baner's motions in limine effectively dismissing Charles's claims for elder abuse, fraud, and misrepresentation. Trial Exhibit 16a, Adv. ECF No. 161-3 at p. 3:16-19; Trial Exhibit 25, Adv. ECF No. 162-7 at p. 9. Charles withdrew his claims for intrusion into private affairs and racketeering. Trial Exhibit 11, Adv. ECF No. 160-11 at pp. 3-4, n.2. The remainder of his claims proceeded to trial.

The parties tried the case to a jury in March 2017. Charles generally testified that he believed Baner conspired with Corwin to get his mother to sign the Power of Attorney and the Trust Transfer Deed. Charles based his argument on his understanding of his mother's condition on the date she signed the Power of Attorney. He maintained that Baner had moved his mother's hand to sign the Power of Attorney and then fraudulently notarized the document. He also complained that Baner had kept the Power of Attorney and Trust Transfer Deed secret and failed to provide those documents to him.

Baner contradicted Charles's testimony. She testified that Ms. Charles understood the durable Power of Attorney and indicated her agreement to the document by squeezing Baner's hand in response after Baner had explained the document to her. Baner acknowledged that Corwin assisted Ms. Charles in signing the document, but she testified that it was Ms. Charles's

---

[7] The court notes that the Fresno, California address listed for Mr. Lyon on the trial transcripts at Trial Exhibits 15-17 is the same address as that found on Robirda Lyon's June 12, 2009 letter to Baner found at Trial Exhibit U. Reference was made during the trial that Robirda and Paul Lyon were married. *See, e.g.,* Trial Exhibit 16a, Adv. ECF No. 161-3 at p. 42:21. It is unclear whether Charles maintained the Lyons' legal representation continuously from 2009 to the trial of the 2014 Lawsuit in 2017.

decision to sign the document and that she properly notarized the Power of Attorney. Baner further denied any intent to hide any documents from Charles, noting that the Health Directive, Power of Attorney, and the Trust Transfer Deed were all publicly recorded.

As to her defamation claim based on the letter Charles had sent, Baner further testified at the state court trial that her secretary read the letter aloud to Baner over the phone while other people were present in the office where Baner's secretary was at the time. Trial Exhibit 16a, Adv. ECF No. 161-3 at pp. 33:5-34:28. At the state court trial, Charles testified that he believed the contents of the August 1, 2014 letter were true. Adv. ECF No. 223-11, Exhibit K at p. 2. Trial concluded on March 21, 2017. Trial Exhibit 17, Adv. ECF No. 162-1.

At the conclusion of testimony, Baner's counsel moved for a directed verdict. *Id.* at p. 85:15-17. The state court denied that motion. *Id.* The state court charged the jury with determining whether Baner was liable to Charles on his remaining claims: civil conspiracy; aiding and abetting; intentional interference with prospective economic advantage; intentional interference with expected inheritance; and intentional infliction of emotional distress. *Id.* at pp. 44:25-45:2. The state court also charged the jury with determining whether Charles was liable to Baner on her counter claims for: malicious prosecution – wrongful use of civil proceeding; abuse of process; intentional infliction of emotional distress; defamation per se; and financial elder abuse. *Id.* at 45:24-46:1.

In its special verdict form, entered on March 22, 2017, the jury rejected Charles's claims. Trial Exhibit 19, Adv. ECF No. 162-3 at pp. 41-42. It also found in favor of Baner on her causes of action for abuse of process, malicious prosecution, defamation, and financial elder abuse. *Id.* at pp. 1-40; *see also* Trial Exhibit 18, Adv. ECF No. 162-2. The jury awarded Baner $10,000 for past economic loss and $25,000 in punitive damages on her abuse of process claim. Trial Exhibit 18, Adv. ECF No. 162-2 at pp. 5-6. On her claim for malicious prosecution, the jury awarded Baner $250,000 for lost earnings and $3,500 in pain and suffering. *Id.* at pp. 2-3. Finally, the jury awarded Baner assumed damages of $100 and $2,000 in punitive damages for defamation. *Id.* at

pp. 4-5. The jury also found that Charles had committed elder financial abuse, but it awarded no damages. Trial Exhibit 19, Adv. ECF No. 162-3, at pp. 36-38.

### E. Charles's bankruptcy, entry of state court judgment and the decision from the California Court of Appeal

After the jury verdict but prior to the entry of the judgment, on May 16, 2017, Charles filed his bankruptcy petition. The court granted Baner's request for relief from the automatic stay to permit the state court to enter judgment. ECF No. 71.[8] The state court entered its judgment on December 19, 2017. Trial Exhibit 18, Adv. ECF No. 162-2.

Charles timely appealed the state court judgment. Trial Exhibit 25, Adv. ECF No. 162-7. The California Court of Appeals affirmed the state court's judgment. *Id.* In its 27-page decision, the appellate court addressed the de facto dismissal of Charles's claims for elder abuse, fraud and misrepresentation on Baner's motions in limine. Though critical of the use of the motions in limine to dismiss claims, the Court of Appeals affirmed the trial court's ruling that Charles lacked standing to assert those claims since Ms. Charles was still alive. *Id.* at pp. 12-21.

The appellate court also discussed the defamation verdict, concurring with the trial court that (1) accusing Baner of criminal conduct constituted a defamatory statement, and (2) Charles, not Baner, was responsible for the publication of the letter to a third party by sending it to Baner's law firm. The appellate court explained that "'[p]ublication' means the intentional or negligent communication of the defamatory matter to someone other than the person defamed." *Id.* at p. 24 (quoting *Haley v. Casa Del Rey Homeowners Assn.*, 153 Cal.App.4th 863, 877-78 (2007)). The appellate court concluded that "[t]he jury could reasonably decide that Charles would recognize that sending a business letter to an attorney at her office created an unreasonable risk that the defamatory matter would be communicated to a secretary, peer or other staff in the ordinary course of business…." *Id.*

---

[8] Pursuant to Fed. R. Evid. 201(c)(1), the court takes judicial notice of its docket in the main case and the associated adversary proceeding filed within Charles's bankruptcy.

The Court of Appeals' decision acknowledges Baner's claims for malicious prosecution and abuse of process but contains no discussion of those claims. The record presented at the nondischargeability trial is devoid of any other information regarding the scope of Charles's appeal. The court infers from the record that Charles did not appeal either the jury's determination of malicious prosecution or abuse of process.

### F.  Baner's adversary proceeding

On June 23, 2017, while Charles's appeal of the state court judgment was pending, Baner commenced this adversary proceeding to declare the judgment nondischargeable under § 523(a)(6). Additionally, Baner sought to deny Charles's discharge under §§ 727(a)(3) and (a)(4)(A).

Charles responded pro se with his answer and a counterclaim for declaratory judgment and civil conspiracy. Adv. ECF No. 9 at pp. 8-9. Though Charles stated a counterclaim against Baner, he also included her state court trial counsel, James Patrick Ferraris, and his receptionist, Dee Prescott, as defendants. The counterclaims once again focused on Charles's allegations that "Cheryl Corwin … conspired with Baner to 'take over' Edith's assets, including Edith's house and $6,500 per month pension." *Id.* at p. 4. Charles further alleged that Ferraris and Prescott had lied to the state court about his attendance for his deposition in the 2014 Lawsuit that resulted in sanctions being entered against him. *Id.* at pp. 6-7. Charles amended his counterclaim. Adv. ECF. No. 11 at p. 2. Ferraris moved to dismiss the first amended counterclaims. Adv. ECF No. 12. The court granted the motion with prejudice.[9] Adv. ECF No. 86.

In February 2018, Baner filed her motion for summary judgment. Adv. ECF No. 55, as amended at Adv. ECF No. 64. Baner argued that the jury verdict and judgment in the 2014 Lawsuit precluded relitigation and established that her debt was for willful and malicious damages excepted from any discharge under § 523(a)(6). Additionally, Baner sought summary

---

[9] After Ferraris moved to dismiss the first amended counterclaim, Charles sought entry of default against Ferraris and Prescott. Adv. ECF Nos. 27 and 29. The court entered default against Ferraris, Adv. ECF No. 32, but promptly vacated entry of default as improvidently granted in light of the pending motion to dismiss. Adv. ECF Nos. 35 and 37.

judgment on her claims under §§ 727(a)(3) and (4) based on Charles's failure to list assets in his bankruptcy schedules. The parties stipulated that the summary judgment motion would be noticed for hearing after Charles's appeal of the state court proceedings concluded. Adv. ECF No. 100. On July 30, 2020, Baner filed her notice of conclusion of state court proceedings, attaching a copy of the California Court of Appeals decision affirming the judgment entered in the 2014 Lawsuit. Adv. ECF No. 103.

On August 2, 2021, this proceeding was assigned to the undersigned. The motion for summary judgment was heard on October 22, 2021. Adv. ECF No. 135. At that hearing, the court read its oral ruling into the record, denying summary judgment as to both the § 523(a) and § 727(a) claims. Adv. ECF No. 139.

Baner filed a motion for relief from the order denying summary judgment. Adv. ECF No. 148. As with the original motion for summary judgment, Baner failed to offer any meaningful analysis of the separate elements for willful and malicious injury under § 523(a)(6). Rather, the request was premised on a more detailed discussion of the elements for malicious prosecution, abuse of process, and defamation, without application to § 523(a)(6). Baner argued that Charles had acted with malice under state law. On reply, for the first time Baner argued that her judgment established willfulness for her § 523(a)(6) claims and generally cited to *Carillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002). Adv. ECF No. 154. Still, Baner offered only conclusory arguments unsupported by any meaningful analysis or caselaw directed to the specific damages awarded to establish the § 523(a)(6) claims. At a hearing on February 18, 2022, the court denied the motion for relief from the summary judgment order. Adv. ECF No. 159. The court did, however, agree that the affirmed 2014 Lawsuit judgment was dispositive on the issue of malice as to Baner's malicious prosecution damages, but the issue of willful intent to injure for those damages (as well as the abuse of process and defamation claims) remained to be decided at trial.

The parties filed their trial briefs before commencement of the trial. Baner's trial brief addressed only her claims under § 523(a)(6). Adv. ECF No. 209. No mention was made of her

claims under §§ 727(a)(3) or (4). Charles's trial brief did not address the § 727(a) claims either. Adv. ECF No. 212.

At trial, Baner relied exclusively on the proceedings in the 2014 Lawsuit. She presented, without objection, the record in the 2014 Lawsuit, including testimony from both her and Charles. Those records were admitted into evidence.

Charles testified in the instant case that he filed the 2011 state court litigation primarily against Corwin in an effort to obtain an accounting of his mother's estate. He stated that he also named Baner as a defendant because she had notarized the Health Directive while his mother was in the hospital. Charles further testified again that Korrey advised him to attend the hearing on Baner's demurrer filed in that case and to seek dismissal of the 2011 Lawsuit because the relief he wanted was more appropriately directed to the probate court.

Korrey also testified at the bankruptcy trial. He did not recall that Charles had litigation pending at the time the probate action was filed. He did recall that Charles had, at some point sued Baner and Corwin, but believed that Charles had voluntarily dismissed that lawsuit. Korrey further testified that he met briefly with Charles prior to the commencement of the 2014 Lawsuit. He stated that after a cursory review of the draft complaint, he advised Charles to retain an attorney to assist him in prosecuting his claims. Though he admitted his review of the claims was cursory, Korrey did not perceive them to be frivolous. Korrey believed that Charles had a viable argument for standing to assert his claims for elder abuse on behalf of his mother in the 2014 Lawsuit.

The day after conclusion of evidence in the bankruptcy trial, the court entered its order setting a deadline for the filing of written closing arguments. Additionally, the court set oral closing arguments for October 11, 2022. Adv. ECF No. 217. The parties' arguments largely focused on the damages for malicious prosecution. Baner's pre-closing brief focused heavily on the application of issue preclusion. Adv. ECF No. 219, pp. 17-22. It did not address either claim under § 727(a).

In his closing argument, counsel for Charles argued that Charles's intent in filing the 2011 state court litigation was to revoke the Trust Transfer Deed signed by Ms. Charles in 2010. He also argued that it was Charles's belief at the time he filed the 2011 Lawsuit as a pro se litigant that he did have standing to assert the claims set forth in that complaint.

At the conclusion of oral argument, the court determined that additional briefing was required on the issue of whether Charles had a subjective intent to injure Baner when he filed and maintained the 2011 Lawsuit. On October 19, 2022, the court set a deadline for a further set of supplemental briefs to be filed, "addressing the evidence (including relevant transcript excerpts) from (1) the 2014 state court litigation which establishes what [] Charles's purpose was in bringing and maintaining that litigation, if not to succeed on the merits, and (2) the briefing and discussion on the same issue from the motion for summary judgment decided by the undersigned." Adv. ECF No. 222 at p. 2.

On November 28, 2022, the court took this matter under submission at the conclusion of the post-trial briefing period.

## Analysis

### A.  Elements of Section 523(a)(6)

"Section 523(a)(6) excepts from discharge debts 'for willful and malicious injury by the debtor to another entity or to the property of another entity.' Both willfulness and maliciousness must be proven to block discharge of a debt under § 523(a)(6)." *Dekhtyar v. Chernyavsky (In re Dekhtyar)*, 2019 WL 1282753, at *3 (B.A.P. 9th Cir. Mar. 19, 2019) (citing *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010)). To prevail on a claim under § 523(a)(6), the plaintiff must prove both willfulness and maliciousness by a preponderance of the evidence. *Transamerica Commercial Finance Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991) (citing *Grogan v. Garner*, 498 U.S. 279, 289-90 (1991)).

For § 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself. *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 61-62 (1998). Section 523(a)(6)'s

willful injury requirement is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Su*, 290 F.3d at 1142. "The [d]ebtor is charged with the knowledge of the natural consequences of his actions." *Ormsby*, 591 F.3d at 1206. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir. 2005), *amended*, 2005 WL 843584 (9th Cir. Apr. 11, 2005) (quoting *Su*, 290 F.3d at 1146 n.6).

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (citations and internal quotations omitted). "Malice may be inferred based on the nature of the wrongful act." *Ormsby*, 591 F.3d at 1207.

## B. Issue preclusion under Section 523

Baner has unsuccessfully sought summary judgment that the judgment in her 2014 Lawsuit established that the damages awarded were for willful and malicious injuries and nondischargeable under § 523(a)(6). Undaunted, at trial Baner has continued to argue that issue preclusion applies as to all damages awarded by the jury in the 2014 Lawsuit. Though the court has twice denied summary judgment on Baner's issue preclusion argument, it did so for a combination of factors. First, an award for malicious prosecution or punitive damages under California law does not establish willfulness under § 523(a)(6) without a sufficient specific factual finding. *See Dekhtyar*, 2019 WL 1282753, at *3 (malicious prosecution); *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 462 (B.A.P. 9th Cir. 2015) (punitive damages). Second, Baner failed to properly develop her § 523(a)(6) arguments as to the damages awarded for abuse of process and defamation. *See Herrera v. Scott (In re Scott)*, 588 B.R. 122, 132-33 (Bankr. D. Idaho 2018) (abuse of process); *Stewart v. Kauanui (In re Kauanui)*, 2015 WL 359088 (Bankr. D. Hawai'i Jan. 23, 2015) (defamation).

16

Baner fails to explain why the court should re-examine its prior denial of issue preclusion after trial has been completed. She has, however, consistently raised issue preclusion throughout the trial and Charles has again substantively addressed the application of issue preclusion. Ultimately, the court's prior orders remain interlocutory. *Hagler v. Budsberg (In re Roth),* 2009 WL 7751410, at *5 (B.A.P. 9th Cir. June 10, 2009), *aff'd,* 431 F. App'x 541 (9th Cir. 2011). And a court "has inherent power to reconsider its interlocutory orders if it finds just cause to do so, so long as it retains jurisdiction in the matter." *USACM Liquidating Trust v. Monaco*, 2010 WL 1849291, *4 (D. Nev. May 6, 2010); *United States v. Smith*, 389 F.3d 944 (9th Cir. 2004); *Luster v. Schomig*, 2010 WL 455008, *1 n. 2 (D. Nev. Feb. 3, 2010). Courts may even reconsider denials of summary judgment sua sponte. *J2 Glob. Commc'ns, Inc. v. Protus IP Sols.,* 2010 WL 1609965, at *3 (C.D. Cal. Apr. 20, 2010) (citing *Smith,* 399 F.3d at 949).

In this instance, Baner has not convinced the court to reconsider its prior rulings on issue preclusion as to the jury's award of damages on Baner's malicious prosecution or defamation claims. As previously discussed in its prior rulings, California law does not require the requisite intent for either claim to support Baner's claims under § 523(a)(6). The court now has the additional benefit of the jury instructions from the 2014 Lawsuit. Those instructions reflect that the state court did not instruct the jury to make specific findings of intent to injure necessary to establish a § 523(a)(6) claim. However, as will be discussed, the jury instruction for the abuse of process claim does clarify the jury's verdict for that claim and requires further consideration of issue preclusion. For this reason, the court briefly reviews the applicable standards.

Issue preclusion does apply in nondischargeability proceedings under § 523. *Fed. Nat'l Mtg. Assoc. v. Willis (In re Willis)*, 629 B.R. 478, 483 (Bankr. D. Nev. 2021) (citing *Grogan,* 498 U.S. at 284 n.11); *see also Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). In granting preclusive effect to a state court judgment, the bankruptcy court "must apply the forum state's law of issue preclusion." *Plyam*, 530 B.R. at 462. Accordingly, the court applies California preclusion law, under which:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Harmon*, 250 F.3d at 1245 (quoting *Lucido v. Superior Court,* 51 Cal.3d 335, 341 (1990)).

Additionally, under California law, a court may only apply issue preclusion "if application of preclusion furthers the public policies underlying the doctrine." *Id.* at 1245 (citing *Lucido,* 51 Cal.3d at 342-43).

The 2014 Lawsuit actually and necessarily decided the elements of the state claims for malicious prosecution, abuse of process, and defamation. Similarly, the 2014 Lawsuit was finally decided on the merits between the same parties. But to give Baner's state court judgment preclusive effect as to the willful and malicious injury necessary to establish her § 523(a)(6) claim, the bankruptcy court must determine whether the issues decided in Baner's state court judgment "are identical to the issues the bankruptcy court confronted" in the § 523(a)(6) action. *Dickens v. Bradley (In re Dickens)*, 2022 WL 3447055, at *6 (B.A.P. 9th Cir. Aug. 17, 2022).

## C.  Malicious Prosecution

In California, "[t]o establish a cause of action for malicious prosecution of a civil proceeding, the plaintiff must show 'that the prior action (1) was commenced [or continued] by or at the direction of the defendant and was pursued to a legal termination in his [or her], plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated [or continued] with malice.'" *Arden v. Silas (In re Arden)*, 2015 WL 4068962, at *9 (B.A.P. 9th Cir. July 2, 2015), *appeal dismissed*, *Silas v. Arden (In re Arden)*, 693 Fed. App'x 596 (9th Cir. July 5, 2017)[10] (quoting *Sheldon Appel Co. v. Albert Oliker*, 47 Cal.3d 863, 871–72 (1989)). In deciding

---

[10] In *Arden*, the Ninth Circuit dismissed Silas's appeal from the BAP decision for lack of jurisdiction, concluding that the BAP's decision to remand lacked finality, thereby depriving the Court of Appeals jurisdiction to hear the appeal at that time under 28 U.S.C. § 158(d)(1). *Arden*, 693 Fed. App'x at 597.

18

the probable cause element, the question "is not whether the defendant believed the facts to constitute probable cause, but whether the court believes they did, an objective standard." *Id.* (citing *Sheldon Appel Co.*, 47 Cal. 3d at 881).

### 1. Malice under § 523(a)(6)

As to the malice required for malicious prosecution, it "'is not limited to actual hostility or ill will toward [the] plaintiff but exists when the proceedings are instituted primarily for an improper purpose.'" *Arden,* 2015 WL 4068962, at *9 (quoting *Albertson v. Raboff*, 46 Cal.2d 375, 383 (Cal. 1956)). California recognizes that the improper purposes that generally motivate a party to file a civil proceeding action include:

> (1) the person instituting them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are instituted of a beneficial use of his property; [or] (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.

*Id.* (quoting *Albertson*, 46 Cal.2d at 383).

By virtue of the state court's jury verdict awarding her damages for malicious prosecution, Baner has established the elements of that cause of action. *Molina v. Seror (In re Molina)*, 228 B.R. 248, 250 (B.A.P. 9th Cir. 1998) ("[A]n unappealed final judgment…even if erroneous, must be given full faith and credit."). Thus, for purposes of establishing malice under § 523(a)(6), Baner has established that Charles engaged in a wrongful act. The jury verdict and judgment established that Charles brought the 2011 Lawsuit without probable cause and with malice as that term is used within the malicious prosecution claim. Charles filed the 2011 Lawsuit pro se, demonstrating that he intentionally undertook the wrongful act. The resulting judgment further established that the filing of the 2011 Lawsuit caused Baner injury. Charles's filing of the 2011 Lawsuit was done without cause or excuse because the jury necessarily found that it was filed without probable cause. Finally, Charles had a full and fair opportunity to litigate the malicious prosecution claim in the 2014 Lawsuit and there are no concerns that preclusion

19

would run afoul of fairness and public policy considerations. The jury verdict and judgment, therefore, established a malicious injury under § 523(a)(6).[11] *Silas v. Arden (In re Arden)*, 834 F. App'x 393, 394 (9th Cir. Jan. 27, 2021) ("A jury found that Arden maliciously prosecuted a malpractice case against Silas, and its verdict was affirmed on appeal. The resulting judgment forecloses any argument that Arden did not injure Silas with malice."); *see also Arden*, 2015 WL 4068962, at *10 ("Comparing the elements of the California intentional tort of malicious prosecution with the requirements to establish a willful and malicious injury excepted from the debtor's discharge under § 523(a)(6), we have no quarrel with the bankruptcy court's conclusion that the 'malicious' element was established….").

### 2. Willfulness under § 523(a)(6)

While the jury's finding of malicious prosecution established the malice component for purposes of § 523(a)(6) under issue preclusion, the same cannot be said for willfulness. This is because "a finding of malice in a malicious prosecution action does not always establish a willful intent to injure under § 523(a)(6)." *Dekhtyar*, 2019 WL 1282753, at *3 (citing *Arden*, 2015 WL

---

[11] That said, if issue preclusion did not establish that Charles maliciously sued Baner in the 2011 Lawsuit, the evidence submitted in the nondischargeability trial satisfied the elements of malice under § 523(a)(6). Charles filed a baseless action against Baner. There is no evidence that Baner owed Charles any legal duty from her representation of either Ms. Charles, Corwin, or both. Nor is there any evidence that Baner sought to deprive Charles of any property. Rather, Charles complained about Corwin's use of his mother's money and her house. Charles had no existing interest in either. Significantly, Charles did not state a claim for elder abuse in the 2011 Lawsuit but only alleged harm to himself and non-existent property interests. This qualified as a wrongful act. He also filed the 2011 Lawsuit intentionally, and it caused Baner damage. The only remaining element is whether Charles filed the 2011 Lawsuit without just cause or excuse. Charles has never explained why it was proper for *him* to sue Baner for her role in obtaining the Health Directive, which he stated was the only document he knew of at the time he filed the 2011 Lawsuit because he did not discover the Power of Attorney or the Trust Transfer Deed until the subsequent probate case. Any such claims did not belong Charles, but to his mother who owned the real and personal property. While Charles may have believed that Baner and Corwin forged his mother's signatures for the execution of the Health Directive that was his mother's cause of action (and there is no evidence in the record that either she, or her guardian, ever brought such a claim). Accordingly, there was no just cause or excuse for bringing the 2011 Lawsuit, and Baner has proven malice under § 523(a)(6) at trial for her malicious prosecution damages.

4068962 at *10). Accordingly, Baner was required to prove at trial that the damages awarded by the jury were for a wilful injury.

In this instance, Baner does not argue that Charles subjectively intended to harm her by filing the 2011 Lawsuit. Rather, she maintains that such harm was "substantially certain" when Charles filed his baseless and frivolous complaint. *Jercich,* 238 F.3d at 1208. However, even substantial certainty of injury under § 523(a)(6) remains dependent upon the debtor's subjective belief.  In *Su,* the Ninth Circuit rejected the objective application of substantial certainty of harm to prove willfulness under § 523(a)(6). Discussing its prior decision in *Jercich*, the court explained:

> The holding in *In re Jercich* is clear: § 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain. Unfortunately, however, the opinion also states that the subjective inquiry it endorsed is "consistent with the approaches taken by the Fifth and Sixth Circuits," in *In re Miller* and *In re Markowitz. Id.* We believe that this claim of consistency is not completely accurate. Nonetheless, Carrillo seizes on this misstatement to rationalize the bankruptcy court's heavy reliance on *In re Miller.* Carrillo's argument fails, however, because the holding of *In re Jercich,* which sets out the scope of § 523(a)(6)'s willful injury requirement, expressly articulates only a subjective dimension. Because the bankruptcy court focused exclusively on the objective substantial certainty of harm stemming from Su's driving, but did not consider Su's subjective intent to cause harm or knowledge that harm was substantially certain, we agree with the BAP that the bankruptcy court applied the incorrect legal standard. Thus, this proceeding must be remanded to the bankruptcy court for consideration of Carrillo's nondischargeability claim under the subjective framework articulated in *In re Jercich.*
>
> We believe, further, that failure to adhere strictly to the limitation expressly laid down by *In re Jercich* will expand the scope of nondischargeable debt under § 523(a)(6) far beyond what Congress intended. By its very terms, the objective standard disregards the particular debtor's state of mind and considers whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor. In its application, this standard looks very much like the "reckless disregard" standard used in negligence. That the Bankruptcy Code's legislative history

> makes it clear that Congress did not intend § 523(a)(6)'s willful
> injury requirement to be applied so as to render nondischargeable
> any debt incurred by reckless behavior, reinforces application of the
> subjective standard. The subjective standard correctly focuses on the
> debtor's state of mind and precludes application of § 523(a)(6)'s
> nondischargeability provision short of the debtor's actual
> knowledge that harm to the creditor was substantially certain.

*Su*, 290 F.3d at 1144–46.

Baner has argued that Charles knew that his 2011 Lawsuit would injure her. She does not say exactly why he knew this. In her motion for relief from the denial of the motion for summary judgment, Baner suggested that Charles knew that the filing of the 2011 Lawsuit would harm Baner because she would be required to retain and use an attorney. Adv. ECF No. 154 at p. 5. Baner represented herself in the 2011 Lawsuit. Moreover, the court instructed the jury in the 2014 Lawsuit: "[y]ou must not consider or include as part of any award attorney's fees or expenses that the parties incurred in bringing or defending this lawsuit." Trial Exhibit 17, Adv. ECF No. 162-1 at p. 48:9-11.

The jury did award Baner $250,000 in past economic damages and $3,500 in noneconomic loss such as pain and suffering on her malicious prosecution claim. Trial Exhibit 18, Adv. ECF No. 162-2. The key to establishing that such damages are for willful injury, however, is proof that Charles knew that the 2011 Lawsuit was frivolous when filed. The filing of any lawsuit may result in attorney fees and emotional stress. Damages exist only if the lawsuit is wrongfully filed or maintained. And those damages are for *willful* injury under § 523(a)(6) only if Charles subjectively knew or was substantially certain that the 2011 Lawsuit would injure Baner as a result of that wrongful filing. That Baner would have to defend herself and deal with the stress and ramifications of a lawsuit is not, of itself, willful injury. Otherwise, every unsuccessful plaintiff would be liable for nondischargeable damages under § 523(a)(6). There is no evidence that Charles knew the 2011 Lawsuit was baseless and filed to harm her. Rather, Baner asks that the court make such an inference from the jury's verdict. But this is not proof

22

that he knew or was substantially certain that the lawsuit would injure Baner because it was wrongfully filed.

Charles filed a frivolous lawsuit. But Baner has presented no authority that this alone establishes willfulness under § 523(a)(6). The court has found no such authority. Absent proof that Charles knew the 2011 Lawsuit was frivolous when filed, Baner attempts to impose an objective standard in violation of *Su.* Such a rule would be particularly troubling when applied to pro se filings.

Baner relies heavily on the Ninth Circuit's decision in *Arden*, 834 Fed. App'x. 393, to support her argument that Charles subjectively knew that the filing of the 2011 Lawsuit would harm her. The debtor, James Arden, filed bankruptcy after judgment for malicious prosecution was entered against him. The judgment creditor sued to establish the debt as nondischargeable under § 523(a)(6), and moved for summary judgment based on the malicious prosecution award. Like Baner, she argued that the judgment established willfulness under § 523(a)(6) and relied on the same pattern California jury instructions used in Baner's 2014 Lawsuit. The bankruptcy court agreed and held that issue preclusion established the nondischargeability of the debt. On appeal, the BAP reversed the grant of summary judgment and remanded the case, reasoning:

> The state court judgment did not necessarily include findings of willfulness within the meaning of § 523(a)(6). The instructions to the jury did not ask specifically that the jury find that the debtor continued the legal malpractice action against Ms. Silas with a subjective intent to harm her. Rather, the jury instructions asked the jury to determine whether the debtor "acted primarily for a purpose other than succeeding on the merits of the claim." The additional jury instructions did not require the jury to specify this purpose. Moreover, the verdict form merely repeated this instruction in the form of a question, to which the jury answered "yes."

*Id*. at *11.

After remand the bankruptcy court held trial and entered judgment that the damages were nondischargeable as willful and malicious damages under § 523(a)(6). The Ninth Circuit affirmed. Reviewing the bankruptcy court's findings, the Ninth Circuit wrote:

Arden continued to accuse Silas of misappropriation in the malpractice suit long after he learned that the allegations were baseless. This supports the bankruptcy court's conclusion that Arden "kept [these] allegations in the suit because the presence of those serious allegations of misconduct would make it more likely that [Silas] ... might settle." While Arden said he left the allegations in by mistake, the court found this explanation "not credible." *In re Su*, 290 F.3d at 1146 n.6 (explaining that a court need not accept the debtor's assertions about his motive as true). What's more, Arden gathered almost no evidence for the malpractice case before the discovery deadline, further supporting the court's finding that Arden knew the claims were meritless. The court concluded on the basis of its findings that Arden acted with "a specific intent to harm," and thus, willfully. That was not error.

*Arden*, 834 F. App'x at 395.

In Baner's case, the state court used the same jury instruction for malicious prosecution and returned the same answer as in *Arden*. The jury simply found that Charles had acted for a purpose other than succeeding on the merits without identifying the purpose. As in *Arden*, neither the jury verdict nor the judgment for malicious prosecution established that Charles had a subjective intent to harm Baner, or subjectively believed there was a substantial certainty that filing the 2011 Lawsuit would injure her.

*Arden* differs from the instant case, however, in what the debtor/defendant knew while pursuing the maliciously prosecuted case. In *Arden*, the debtor was a lawyer who chose not to apply controlling precedent and did not review his client's prior testimony to determine whether the WCA exception applied. Moreover, the debtor chose to ignore repeated efforts by the original attorney to demonstrate the falsity of the misappropriation claim. Though the debtor's counsel testified that he did not intend to harm the original attorney by filing the malpractice action, the bankruptcy court properly found him not credible.

Here, there is no evidence that Charles knew that his 2011 Lawsuit would, or was substantially certain, to harm Baner. Arden continued to pursue baseless claims "long after he knew that the allegations were baseless." *Arden*, 834 Fed. App'x at 395. There is no evidence that Charles knew that his claims were baseless. Baner argues that he must have known because

24

he was previously a paralegal. This is mere argument. There is nothing in the record as to Charles's training as a paralegal, what paralegal experience he may have had, or why a paralegal should know that these claims were baseless.

Moreover, Charles testified that while he filed an opposition to Baner's demurrer in the 2011 Lawsuit, he subsequently spoke with his probate counsel and was convinced that he should proceed in probate court to obtain the relief he sought. Charles testified that after his discussion with counsel he did not oppose dismissal. Baner discounts this testimony, primarily based on the minutes of the hearing at which the state court dismissed the 2011 Lawsuit. Those minutes simply indicate that argument was taken. Trial Exhibit 3, Adv. ECF No. 160-3. Baner contends that this notation means that Charles continued to oppose her demurrer. That is certainly possible, but so is Charles's statement that he had decided to pursue recourse in probate court.

Baner filed her demurrer on July 27, 2011. *Id.* Charles filed his petition for a conservatorship on August 11, 2011. Adv. ECF No. 219 at p. 2. The state court granted the demurrer on September 22, 2011, and entered Notice of Entry of Dismissal on October 13, 2011. Trial Exhibit 4, Adv. ECF No. 160-5. The probate court appointed a conservator for Ms. Charles on November 1, 2012. Adv. ECF No. 219 at p. 2.

The timing and sequence of these events supports Charles's testimony that he willingly abandoned the 2011 Lawsuit after conferring with his probate counsel. Importantly, these events demonstrate that Charles was not wrong. He obtained appointment of a conservator despite whatever authority Corwin had obtained from their mother. Though the details of the probate action are not in evidence, the appointment of the conservator suggests that Charles's underlying concerns and arguments had some validity, however misdirected they may have been as raised against Baner. Unlike *Arden,* these events support Charles's testimony that he did not file the 2011 Lawsuit to harm Baner, or that he subjectively knew that harm was substantially certain to occur. Rather, Charles filed an array of claims in an effort to address the management of his mother's affairs after her stroke. He did so after attempting, in a somewhat ham-handed manner, to get information from both Baner and Corwin about his mother's finances. Those attempts

25

were unsuccessful. There is also unrebutted testimony from Charles in both the 2014 trial and the nondischargeability trial that the probate action uncovered problems with Corwin's accounting that resulted in some sort of settlement between her and Charles based on Corwin's use of their mother's money. Though the allegations against Baner were found to be baseless as pled in the 2011 Lawsuit, the evidence presented does not establish that Charles, proceeding pro se, filed the 2011 complaint with the requisite subjective intent to harm Baner, nor was he substantially certain she would be harmed.[12]

In sum, Baner has shown that Charles filed the 2011 Lawsuit with malice as that term is used under § 523(a)(6) based on the jury's finding of malicious prosecution in the 2014 Lawsuit. She has not, however, proven that Charles subjectively intended, or subjectively knew that harm was substantially certain to occur when he filed the 2011 Lawsuit against her. Accordingly, the court denies Baner's claims that the damages for malicious prosecution are nondischargeable as a willful and malicious injury under § 523(a)(6).

---

[12] Baner repeatedly argues that Charles's subsequent actions prove that he filed the 2011 Lawsuit with the subjective intent to harm. Charles sued Baner for the same activity in the 2014 Lawsuit and later asserted the same actions as counterclaims in this action. Charles then filed another state court action in 2017 against Baner and was declared a vexatious litigant. Trial Exhibit 37, Adv. ECF No. 205-6. This subsequent activity does not help Charles, but it occurred almost three years after the court dismissed the 2011 Lawsuit. Charles was represented by counsel in the 2014 Lawsuit and several of his claims were allowed to go to the jury over Baner's motion for directed verdict. Trial Exhibit 17, Adv. ECF No. 162-1 at p. 90:4-10 ("In this particular case, there has been presented by the plaintiff evidence to deal with the issues of conspiracy, damages, and forgery…. Therefore, there having been tendered evidence of these facts, evidence that is sufficient if the trier of fact is to believe the evidence…to sustain a verdict for the plaintiff, therefore, the motion is denied."). The court is unclear how those claims can now be deemed frivolous or baseless. While not directly on point, it is difficult to accept that Charles had the intent to harm in filing the 2011 Lawsuit when similar claims were permitted to go to trial on substantially the same facts and circumstances in the 2014 Lawsuit. The two actions in 2017 were filed after the jury verdict in the 2014 Lawsuit and pending his appeal. It was only then that Charles was found to be a vexatious litigant. This situation is much different than that in 2011. To the extent that the 2017 cases are relevant, the court declines to give them any weight in assessing Charles's subjective intent in 2011.

26

**D.  Abuse of Process**

The jury also awarded Baner $10,000 in past economic loss and $25,000 in punitive damages for abuse of process in the filing of the 2014 Lawsuit. Comparatively little attention has been given to the abuse of process damages in comparison to the malicious prosecution award arising from the 2011 Lawsuit. But it is well established that "[a] debt incurred by abuse of process may present a cause of action under § 523(a)(6) either as punitive tort damages or as a sanction." *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 607 (B.A.P. 9th Cir. 1998); *see also Black v. Bonnie Springs Family Ltd. P'ship (In re Black),* 487 B.R. 202 (B.A.P. 9th Cir. 2013); *Scott*, 588 B.R. 122.

Under California law the elements of a cause of action for abuse of process are "(1) an ulterior motive in using the process and (2) the use of the process in a wrongful manner." *Abraham v. Lancaster Comm. Hosp.,* 217 Cal.App.3d 796, 826 (1990) (quoting *Drasin v. Jacoby & Meyers,* 150 Cal.App.3d 481, 485 (1984)). Process has been "broadly interpreted to encompass the entire range of procedures incident to litigation." *Younger v. Solomon,* 38 Cal.App.3d 289, 296 (1974). In general, "an action lies only where the process is used to obtain an unjustifiable collateral advantage." *Ion Equip. Corp. v. Nelson,* 110 Cal.App.3d 868, 876 (1980).

Importantly, a claim for abuse of process differs from a claim for malicious prosecution; it "is not just another name for malicious prosecution." *Maleti v. Wickers*, 82 Cal.App.5th 181, 230 (2022), *as modified on denial of reh'g* (Sept. 9, 2022), *review denied* (Nov. 22, 2022) (quoting *Bidna v. Rosen*, 19 Cal.App.4th 27, 40 (1993)). "[W]hile a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." *JSJ Limited Partnership v. Mehrban*, 205 Cal.App.4th 1512, 1523 (2012). Rather, abuse of process requires "[s]ome definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process." *Younger*, 38 Cal.App.3d at 297. A claim for abuse of process "lies only

where the process is used to obtain an unjustifiable collateral advantage. For this reason, mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort." *Id*. "Abuse of process claims include lawsuits involving improper uses of the *tools* afforded litigants, such as the improper use of discovery; service of wrongful attachments; obtaining a temporary restraining order to perpetuate a false representation concerning a party; knowingly filing debt collection actions in improper venues for the purpose of impairing the debtors' ability to defend themselves; and knowingly filing collection actions in the wrong states to obtain default judgments upon which improper garnishment orders may be obtained." *Maleti*, 82 Cal.App.5th 181, 230–31 (cleaned up). Therefore, "process must be used for something more than a proper use with a bad motive; that if a party uses it for the immediate use for which it was intended, he is ordinarily not liable, notwithstanding a vicious or vindictive motive; that if he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." *Pimentel v. Houk*, 101 Cal.App.2d 884, 887 (1951) (citing *Hauser v. Bartow*, 7 N.E.2d 268, 269 (N.Y. 1937)).

At trial in the 2014 Lawsuit, the court instructed the jury that to prevail on her abuse of process claim Baner was required to prove that Charles "instituted this litigation," referring to the commencement of the 2014 Lawsuit as the legal process abused. Trial Exhibit 17, Adv. ECF No. 162-1 at p. 29:17-27. The parties have generally argued about other actions and activity as they relate to the willful and malicious nature of the damages award to Baner. This is neither relevant, nor helpful, as to the damages awarded for abuse of process. The record in the 2014 Lawsuit demonstrates that the state court instructed the jury that the abused legal process was the institution of the 2014 Lawsuit.

As to Charles's ulterior motive served, the court further instructed the jury that Baner was required to prove "that Jeffrey Charles intentionally used … this legal procedure to harass and embarrass Yvonne Baner." *Id*. The special verdict form for abuse of process returned by the jury found Charles liable for abuse of process. In doing so, it necessarily agreed that Charles acted

28

primarily for a purpose other than succeeding on the merits of his claims. Trial Exhibit 19, Adv. ECF No. 162-3 at p. 16, ¶ 2.

Baner still relies on the jury award to establish the willful and malicious injury of the abuse of process damages. Baner has now more fully developed her abuse of process claim for purposes of issue preclusion by submitting the entire record for the trial of the 2014 Lawsuit, though it is unclear why the jury instructions and legal analysis could not have been presented previously. Yet, the court's prior rulings on summary judgment remain interlocutory and subject to re-examination. Indeed, Charles has not objected to Baner's renewed arguments for application of issue preclusion. And there is no dispute that four of the five elements for issue preclusion have been met. The parties are the same and the judgment has been finally litigated on the merits. It is equally well established that the parties actually and necessarily litigated the elements of abuse of process: whether Charles had an ulterior motive in using the process and did so in a wrongful manner.

Again, the question in dispute is whether the elements for abuse of process are identical for the purposes of proving a willful and malicious injury under § 523(a)(6). Working backwards, Baner's judgment necessarily established a wrongful act (the abuse of process) undertaken with an ulterior motive. The state court instructed the jury that Charles's commencement of the 2014 Lawsuit was the purported wrongful act that Baner alleged he committed to harass and embarrass her. The jury found that Baner proved these elements, and the court entered judgment on the abuse of process claim.

In an abuse of process claim, it is the purposeful undertaking of the wrongful act that establishes willfulness under § 523(a)(6). *Black*, 487 B.R. at 213 ("The bankruptcy court correctly determined that 'ulterior purpose' under an abuse of process claim equates with 'willfulness' under § 523(a)(6)."); *Scott*, 588 B.R. at 132-33. Even if Charles did not subjectively intend to injure Baner by his wrongful use of the legal process, the very act of abusing the legal process for an ulterior purpose is substantially certain to cause harm to the litigant subject to the abuse. *Scott*, 588 B.R. at 133. Charles cannot avoid the natural consequences of his wrongful

29

action. *Ormsby,* 591 F.3d at 1206. As such, the judgment for abuse of process established the willfulness of those damages.

Similarly, as to malice under § 523(a)(6), the filing of the 2014 Lawsuit was an intentional act that the jury found was done in a wrongful manner. Because the abuse of process was necessarily done for an ulterior and wrongful manner, it was also done without just cause or excuse. Finally, because the abuse of process was done to embarrass and harass Baner, the wrongful act necessarily caused her injury, for which the jury awarded $10,000 in compensatory damages. *See Hough v. Stockbridge*, 2013 WL 1748450, at *3 (W.D. Wash. Apr. 23, 2013) ("In 'improperly' using legal process, the Debtor necessarily committed a wrongful act. In doing so for an 'ulterior purpose,' such act was intentional and necessarily caused injury.").

Though the court is now convinced that the judgment for abuse of process is sufficiently identical to the willful and malicious components of § 523(a)(6) as a matter of law, the court must still consider whether it should exercise its discretion to apply issue preclusion. As Baner has recognized, California requires that issue preclusion be applied in furtherance of public policy. Adv. ECF No. 209 at 16 (citing *Dekhtyar*, 2019 WL 1282753 at *3). This concern considers the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment. *Lucido,* 51 Cal.3d at 341. Ordinarily, these factors weigh heavily in favor of issue preclusion to avoid trial. Here, it presents an unusual twist. Baner failed to establish that issue preclusion applied prior to trial. As a result, her nondischargeability claims proceeded to trial on all damages awarded by the jury and the record in the 2014 Lawsuit was admitted into evidence and supplemented by testimony from Charles and Korrey. The evidence is problematic as to Charles's actual intent to injure Baner by filing the 2014 Lawsuit.[13] Charles

---

[13] Moreover, the wrongful institution or maintenance of an action sounds in malicious prosecution, not abuse of process. *Maleti,* 82 Cal.App.5th at 230; *JSJ Limited Partnership*, 205 Cal.App.4th at 1523. More importantly, the denial of Baner's motion for directed verdict at trial established that the trial court found some evidence existed to support submitting Charles's remaining claims to the jury. This would seem to establish that the institution and maintenance of the 2014 Lawsuit was not improper or wrongful, whatever Charles's intent may have been. *See Younger*, 38 Cal.App.3d at 297; *Pimentel*, 101 Cal.App.2d at 887 (if a plaintiff "uses the process

had his probate attorney briefly review his complaint prior to filing the 2014 Lawsuit and was

told that he needed representation but that there was some basis for his claims, including the

claim for elder abuse on behalf of his mother. Though he filed the 2014 Lawsuit pro se, he

obtained representation. His counsel continued to prosecute the 2014 Lawsuit. Counsel also

represented Charles at trial and defeated Baner's motion for directed verdict. All of this strongly

suggests that some of Charles's claims, while unsuccessful, were not improper. Again, the court

is confused as to how claims that survive a directed verdict can also form the basis for abuse of

process. The court is further confused as to how the pursuit of such claims results in willful and

malicious injury. Yet, that is what the jury was instructed, and found.

       The court is also troubled that having failed to adequately establish issue preclusion

Baner was required to establish the willful and malicious injury from the abuse of process award

at trial. For the reasons just discussed, based on the review of the evidence presented during the

trial of the 2014 Lawsuit, she has not done so. But that is apart from the jury's verdict for abuse

of process. That award and judgment are entitled to full faith and credit. *See Molina*, 228 B.R. at

250; *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 76 (1984) (citing 28

U.S.C. § 1738) ("[S]tate judicial proceedings shall have the same full faith and credit in every

court within the United States as they have in the courts of the State from which they are

taken…."). And Baner has belatedly established that by virtue of that judgment, the willful and

malicious nature of her injury has been necessarily established. Put bluntly, the jury instructions

for abuse of process may well have been erroneous given the focus on the initiation of the 2014

Lawsuit and that Charles's claims were allowed to go to the jury over Baner's motion for

directed verdict. But Charles failed to raise that error in his appeal, and that judgment is final.

Giving the final judgment full faith and credit, it necessarily establishes the nondischargeability

of the damages awarded for abuse of process under § 523(a)(6) by application of issue

preclusion. To hold otherwise would be to permit an impermissible collateral attack on a final

---

of the court for its proper purpose, though there is malice in his heart, there is no abuse of
process.").

judgment. Not without some reservation, the court concludes that application of issue preclusion on the abuse of process claim furthers public policy to recognize the jury's verdict. For this reason, the jury's award of damages on the abuse of process claim established that the compensatory damages were for willful and malicious injury that are nondischargeable under § 523(a)(6).

In accordance with controlling Ninth Circuit law, the punitive damages portion of the award for abuse of process is also nondischargeable. *Muegler v. Bening*, 413 F.3d 980, 984 (9th Cir. 2005) (citing *Moraes v. Adams (In re Adams)*, 761 F.2d 1422, 1428 (9th Cir. 1985)) ("When the awards of compensatory damages and punitive damages are based upon the same conduct, the punitive damages award will be nondischargeable under § 523(a)(6) if the compensatory damages award is found to be nondischargeable."); *see also Cohen v. de la Cruz*, 523 U.S. 213, 218-19 (1998).

## E.  Defamation

Finally, the jury found that Charles had defamed Baner in his 2014 letter by accusing her of criminal behavior. The jury awarded Baner damages under defamation per se as to a private figure on a matter of private concern. The significance of this designation is that California agrees with "the near unanimous authority that a private person need prove only negligence (rather than malice) to recover for defamation." *Brown v. Kelly Broadcasting Co.* 48 Cal.3d 711, 742 (1989); *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 398 (2001) ("to prove libel, a private figure must prove the defendant, at a minimum, *negligently* made the statements"); *Khawar v. Globe Intern., Inc.*, 19 Cal.4th 254, 274 (1998) ("[T]his court has adopted a negligence standard for private figure plaintiffs seeking compensatory damages in defamation actions.")

The instructions provided to the jury required them to determine whether Charles made a statement accusing Baner of criminal activity to a person other than Baner. Trial Exhibit 17, Adv. ECF No. 162-1 at p. 33:16-17. Similarly, the special verdict form merely asked the jury if Charles accused Baner "of criminal and immoral conduct in a letter dated August 1, 2014, which

was read by a person or persons other than YVONNE BANER?" Trial Exhibit 19, Adv. ECF No. 162-3 at p. 10. Though the jury answered "yes," it was not required to, and did not, make any finding as to Charles's intent in publishing the statement. Indeed, discussing defamation on appeal, the Court of Appeals recognized that "[p]ublication means the intentional or negligent communication of the defamatory matter to someone other than the person defamed." Trial Exhibit 25, Adv. ECF No. 162-7 at p. 24 (citing *Haley v. Casa Del Rey Homeowners Assn.*, 153 Cal.App.4th 863, 877-78 (2007)). Similarly, the Court of Appeals observed: "The statement need not be intentionally communicated to the third person. A defamatory statement negligently communicated to a third party will suffice." *Id*. Affirming the jury's verdict, the Court of Appeals concluded that "[t]he jury could reasonably decide that Charles would recognize that sending a business letter to an attorney at her office created an unreasonable risk that the defamatory matter would be communicated to a secretary, peer or other staff in the ordinary course of business…." *Id*. The decision on appeal speaks in terms of negligent publication and defamation, not subjective intent to injure.

The bankruptcy court in *Stewart v. Kauanui (In re Kauanui)*, 2015 WL 359088 (Bankr. D. Hawai'i Jan. 23, 2015) considered whether a prepetition California defamation award established willful and malicious injury under § 523(a)(6). Applying California law, the court succinctly summarized the issue now presented by Baner's claim:

> Defamation is an intentional tort. To win, the plaintiff must prove that there was "'(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' (Missing end quote in original I think) None of these elements involves an intent to injure the plaintiff. Neither is there a requirement that an injury be substantially certain. Instead, the plaintiff need only prove that the defendant published something that was false, defamatory, and unprivileged and that the publication had a natural tendency to injure or caused special damage.

> In other words, Ms. Stewart could recover for defamation under California law if Ms. Kauanui acted intentionally and harm followed. Ms. Stewart was not required to prove that Ms. Kauanui intended to injure Ms. Stewart.

> A claim for defamation could support a determination of nondischargeability, but only if the plaintiff proved willful and malicious conduct. A California judgment for defamation, without additional specific findings, does not establish that the defendant acted willfully and maliciously under section 523(a)(6).

*Id.* at *3 (citations omitted).

As explained in *Kauanui*, an award for defamation of a private person may support nondischargeability under § 523(a)(6), if there is a specific finding that the statements were made with the intent to harm or the debtor was substantially certain they would harm that person. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 832 (B.A.P. 9th Cir. 2006) ("The arbitrator found that Khaligh's false and defamatory statements were made with the intent to harm Hadaegh."). Here, the jury made no such finding. Thus, the judgment for defamation did not decide the identical issues for willful and malicious damages for purposes of § 523(a)(6). As the court has previously held, issue preclusion based on defamation under California law is not appropriate.

More to the point, Baner has presented no persuasive evidence or argument that Charles had the subjective intent to injure Baner by sending the letter to her. Rather, on the court's review of the evidence presented at the trial of the 2014 Lawsuit, Charles negligently sent the letter to Baner at her work where there were others that might reasonably read or hear the defamatory statement. Charles's negligence precludes any finding that he was substantially certain that the letter would damage Baner by being read by a third person. Baner has otherwise failed to prove that Charles had the sufficient intent to harm Baner when he mailed the defamatory letter.

The jury did, however, award punitive damages to Baner on her defamation claim. As the jury was instructed, California permits an award of punitive damages for conduct taken with malice, oppression or fraud. California Civil Code § 3294. An award of punitive damages can support a claim under § 523(a)(6) under issue preclusion, but only if it was founded upon intentional malice or fraud. *Plyam*, 530 B.R. at 465. This is because intentional malice and fraud expressly require an intent to cause injury**.** *Id.* "Conversely, Despicable Malice and oppression,

34

which arise from acts in conscious disregard of another's rights or safety, fail to satisfy the requisite state of mind for § 523(a)(6) willfulness…conscious disregard is akin to recklessness."[14] *Plyam*, 530 B.R. at 465.

In this instance, the jury awarded Baner $2,000 for punitive damages resulting from the defamation because Charles had acted with "malice, oppression or fraud." As in *Plyam*, because the jury did not state the specific basis for its award of punitive damages, preclusion is not appropriate on the issue of willfulness under § 523(a)(6). As explained above, the evidence presented at trial in the 2014 Lawsuit demonstrates that Charles did not have the willful intent to publish his written comments to anyone other than Baner. Accordingly, on an independent review of the evidence presented during the 2014 Lawsuit and the supplemental testimony in this case, the court finds that Charles consciously disregarded the potential harm that could result from sending the letter to Baner's office. But as was made clear in *Plyam,* "any level of risk below a substantial certainty is insufficient for § 523(a)(6) purposes." *Garcia v. Fawzy (In re Garcia)*, 2020 WL 5203201, at *6 (B.A.P. 9th Cir. Sept. 1, 2020). Accordingly, Baner has not proven that the punitive damages for defamation are nondischargeable under § 523(a)(6).

## Conclusion

In sum, though the jury's verdict in the 2014 Lawsuit established that the jury's damages awarded for malicious prosecution were malicious for purposes of § 523(a)(6), Baner failed to establish that they were willful. She has, however, established that the compensatory and punitive damages awarded for abuse of process necessarily prove that they were for willful and malicious injury and are nondischargeable under § 523(a)(6). Finally, Baner has not proven that

---

[14] Although never discussed by Baner's counsel, the *Plyam* court further explained: "Construing conscious disregard as a form of reckless conduct is consistent with *Geiger* and its progeny, including the Ninth Circuit's decisions in *In re Jercich* and *In re Su*… Thus, consistent with *Geiger*, we must reject the attempt to give issue preclusive effect to findings based on conscious disregard in the context of § 523(a)(6) willfulness." *Plyam*, 530 B.R. at 469-70.

the damages awarded for defamation were nondischargeable under § 523(a)(6). The court shall enter a separate judgment consistent with this ruling.

      IT IS SO ORDERED.

* * * * *

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #